821 A.2d 52

**Erin Jones WOLFE**

v.

**ANNE ARUNDEL COUNTY, Maryland.**

**No. 1, Sept. Term, 2001.**

Court of Appeals of Maryland.

April 8, 2003.

led to the ASP contract, MPPI and Mercy were both represented by a third entity created by Mercy, Mercy Ventures, Inc.

William F. Gately (H. Thomas Howell of Howell & Gately, on brief), Baltimore, for petitioner/cross-respondent.

David A. Plymyer, Deputy County Attorney (Linda M. Schuett, County Attorney, on brief), Annapolis, for respondent/cross-petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

The issue in this case is whether Anne Arundel County must provide liability insurance coverage to a former county police officer, pursuant to the self-insurance provisions of the Anne Arundel County Code, the regulations thereunder, and the applicable collective bargaining agreement. The Circuit Court for Anne Arundel County and the Court of Special Appeals held that the former police officer's conduct was not covered by the County's self-insurance program. We agree and shall affirm the judgments below.

## I.

On November 15, 1990, at approximately 2:00 a.m., Anne Arundel County police officer Michael D. Ziegler was on traffic patrol in the Pasadena area of Anne Arundel County when he effected a traffic stop of Erin Jones Wolfe, then known as Erin Kathleen Jones. Ziegler suspected Wolfe of driving while intoxicated, but, rather than arresting her, he asked her to sit in the passenger seat of his patrol car and indicated that he would drive her home. Ziegler informed the police dispatcher by radio that he was "out of service" and was going home to check on a faulty furnace. Instead of driving Wolfe directly home, Ziegler drove her to a remote location in the parking lot of a church in Anne Arundel County where, according to Wolfe, he raped her. He then drove her home, where she called 911 to report the rape. As a result of the incident, Ziegler was criminally charged with second degree rape and lesser offenses. He was ultimately convicted of

misconduct in office, for which he received a one-year suspended sentence and five years probation. He agreed to, and did, resign from the police force.

Subsequently, Wolfe brought an action in the Circuit Court for Anne Arundel County against Ziegler, certain police officials, and Anne Arundel County. She claimed a violation of her civil rights and sought relief under 42 U.S.C. § 1983. She also claimed damages based on various asserted causes of action under Maryland law. The defendants removed the suit to the United States District Court for the District of Maryland. Wolfe's claim against Ziegler was severed from her claims against the police officials and Anne Arundel County. As to the action against Ziegler, a jury returned a $1.15 million verdict in favor of Jones and against Ziegler, awarding her both compensatory and punitive damages. The verdict was based on § 1983 and common law battery.

After the entry of judgment on the jury's verdict against Ziegler, the United States District Court granted summary judgment in favor of the police officials and Anne Arundel County on the § 1983 claims against those defendants, holding that, as a matter of law, the plaintiff failed to establish a § 1983 cause of action against them. The federal court then declined to exercise pendent jurisdiction over Wolfe's state law battery and negligence claims against the police officials and Anne Arundel County, and, on this basis, granted summary judgment in favor of the officials and the County. Finally, with regard to Wolfe's claim for indemnification against the County because of the judgment against Ziegler, the United States District Court "concluded that this claim of indemnification is premature." *Jones v. Ziegler,* 894 F.Supp. 880, 897 (D.Md.1995). The District Court's judgment was affirmed by the United States Court of Appeals for the Fourth Circuit, *Jones v. Wellham,* 104 F.3d 620 (4th Cir.1997).

After the judgment against Ziegler in the federal case, Ziegler filed, with the Anne Arundel County Self-Insurance Fund Committee, a claim for indemnification. Ziegler's claim was denied by the Committee, and Ziegler appealed to the

Anne Arundel County Board of Appeals. The Board of Appeals conducted a *de novo* hearing and thereafter denied the claim on the ground that Ziegler's tortious and criminal conduct was not within the scope of his employment and that, therefore, the claim was beyond the scope of the self-insurance coverage. Ziegler did not seek judicial review of the Board of Appeals' decision.[1]

Wolfe's efforts to satisfy the judgment against Ziegler were unsuccessful, and, in 1997, Wolfe filed in the Circuit Court for Anne Arundel County the present action against Anne Arundel County. In her complaint, as amended, Wolfe asserted in count one that the County was contractually required to indemnify Ziegler and that the County should therefore pay the full amount of the unpaid judgment, plus attorneys' fees and accrued interest, to Wolfe. Wolfe sought a declaratory judgment and money damages under count one. In counts two and three of the amended complaint, Wolfe alleged that the County was guilty of "bad faith" in failing to settle the civil rights claims and that the County, by defending Ziegler in the federal court action, was estopped to deny coverage to Ziegler. The complaint also recited that Ziegler had assigned to Wolfe the claims set forth in counts two and three, and that Wolfe was entitled to money damages under those counts.

Following a hearing, the introduction of numerous exhibits, and the submission of various documents, the Circuit Court dismissed counts two and three, holding that Wolfe had failed to state claims upon which relief could be granted. The Circuit Court denied Anne Arundel County's alternative motion to dismiss all three counts on grounds of *res judicata* or collateral estoppel. Subsequently, the Circuit Court granted Anne Arundel County's motion for summary judgment as to count one, and, in its order, made the following declaration:

---

1. Section 604 of the Anne Arundel County Charter authorizes judicial review, in the Circuit Court for Anne Arundel County, of "any decision by the County Board of Appeals." *See also* Maryland Code (1957, 2001 Repl.Vol., 2002 Supp.), Art. 25 A, § 5(U).

"This Court is bound by the settled law found in *Cox v. Prince George's County*, 296 Md. 162, 165, 460 A.2d 1038, 1039–40 (1983). Plaintiff in this action has not met the two-prong test in order to hold the County liable for the acts of Officer Ziegler. To explain, although Plaintiff has shown that at one time a master-servant relationship existed between the County and Officer Ziegler, Plaintiff has not demonstrated 'that the offending conduct occurred within the scope of the employment of the servant or under express or implied authorization of the master.' *Cox*, 296 Md. at 165, 460 A.2d at 1039–40. For this reason, the Court must deny Plaintiff's motion for summary judgment. Finding that no material fact is in dispute and that Defendant is entitled to judgment as a matter of law, in accordance with Maryland Rule 2–501, Defendant is hereby granted summary judgment as to Count I of the [amended] complaint."

■ Wolfe appealed to the Court of Special Appeals, arguing that the Circuit Court erred as a matter of law with respect to all three counts in the amended complaint. Anne Arundel County cross-appealed, contending that the Circuit Court should have dismissed the entire complaint on grounds of *res judicata* or collateral estoppel.[2] The Court of Special

---

**2.** We note that the County's cross-appeal was improper. This Court in *Offutt v. Montgomery County Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979), explained:

"It should be pointed out that, as a procedural matter, the cross-appeal in this case does not properly lie. Although the defendant School Board may not like the language in the trial court's opinion stating that the Board bargained in bad faith, the final judgment of the trial court, by denying any relief to the plaintiffs, is entirely in the School Board's favor. It is established as a general principle that only a party aggrieved by a court's judgment may take an appeal and that one may not appeal or cross-appeal from a judgment wholly in his favor.

\* \* \*

"Where a party has an issue resolved adversely in the trial court, but like the School Board here receives a wholly favorable judgment on another ground, that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial."

Appeals, agreeing with the Circuit Court's rulings favorable to the County, affirmed the judgment. *Wolfe v. Anne Arundel County,* 135 Md.App. 1, 761 A.2d 935 (2000). The appellate court quoted the Anne Arundel County self-insurance regulations which covered employees' actions only "while acting within the scope of their duties as" county employees, and which expressly excluded, *inter alia,* "willful actions" and "punitive damages." The appellate court concluded that Ziegler was not acting within the scope of his duties.

Furthermore, as alternative grounds for affirmance, the Court of Special Appeals held that Wolfe's action was barred by the final decision of the Anne Arundel County Board of Appeals and principles of *res judicata.* The intermediate appellate court, pointing out that Wolfe's present action was based on the alleged self-insurance coverage for Ziegler's tortious conduct and the assignment, stated that Wolfe had no greater rights under the self-insurance program than Ziegler had. The Court of Special Appeals further stated that the Board of Appeals' decision, that there was no insurance coverage, was dispositive of the coverage issue. Since no action for judicial review of the Board of Appeals' decision had been filed within the 30–day limitations period, the Board's decision became final. Thus, according to the intermediate appellate court, the present action was barred by principles of administrative law, the statute of limitations, and *res judicata. Wolfe v. Anne Arundel County, supra,* 135 Md.App. at 20–28, 761 A.2d at 945–949.[3]

---

*See, e.g., Montrose Christian School v. Walsh,* 363 Md. 565, 577 n. 3, 770 A.2d 111, 118 n. 3 (2001); *Insurance Commissioner v. Equitable,* 339 Md. 596, 612 n. 8, 664 A.2d 862, 870 n. 8 (1995); *Paolino v. McCormick & Co.,* 314 Md. 575, 579, 552 A.2d 868, 870 (1989); *Auto. Trade Ass'n v. Harold Folk Enterprises,* 301 Md. 642, 648–649, 484 A.2d 612, 615 (1984).

3. In this Court, Anne Arundel County construes the portion of the Court of Special Appeals' opinion, setting forth the alternative grounds for affirmance, as relating only to counts two and three of Wolfe's amended complaint. Some of the language used by the Court of Special Appeals supports this view, although other language and reasoning in the opinion suggests that the alternative grounds related to all three counts.

Wolfe filed in this Court a petition for a writ of certiorari, presenting the single question of whether Anne Arundel County's self-insurance provisions covered Ziegler's tortious conduct. No issue was raised with regard to counts two and three of the amended complaint. Anne Arundel County filed a cross-petition for a writ of certiorari, presenting its alternative contention that count one of Wolfe's complaint was barred by principles of *res judicata* or collateral estoppel based upon the final decision of the Anne Arundel County Board of Appeals. This Court granted both the petition and the cross-petition. *Wolfe v. Anne Arundel County,* 363 Md. 205, 768 A.2d 54 (2001).

## II.

### A.

The Anne Arundel County self-insurance program has its roots in several enactments and documents.

Preliminarily, the Maryland Local Government Tort Claims Act, Code (1974, 2002 Repl.Vol.), §§ 5–301 through 5–304 of the Courts and Judicial Proceedings Article, requires local governments, including Anne Arundel County, to provide a legal defense in a tort suit against a county employee based on "acts or omissions committed by an employee within the scope of employment with the local government" (§ 5–302(a)). The Act also provides that the local government, up to specified monetary limits and with certain other limitations, must pay "any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government" (§ 5–303(b)). The Act contains exceptions to local government liability for, *inter alia,* malicious acts and punitive damages (§§ 5–302(b)(2)(i) and 5–303(c)).

---

We need not explore this matter further in light of our holding that the Court of Special Appeals and the Circuit Court correctly held that Ziegler's tortious and criminal conduct was not covered by the Anne Arundel County self-insurance program.

In addition to Anne Arundel County's obligations under the Local Government Tort Claims Act, § 526(b) of the Anne Arundel County Charter states (emphasis added):

"Subject to any limitation or exception that the County Council specifies by ordinance, the County Attorney shall defend any officer or employee of the County in any civil action brought against the officer or employee by reason of any act done or omitted to be done *in the scope of the officer's or employee's employment.* In any case defended by the County Attorney under this section, the County shall pay all court related expenses charged to the officer or employee."

Article 2 §§ 5–101 *et seq.* of the Anne Arundel County Code establish the County's "Self–Insurance Fund," provide for an annual appropriation to the Fund, and establish a "Self–Insurance Fund Committee" to review and approve or disapprove all claims for payment where the amount exceeds $5,000. Section 5–104(d)(3) of the Code mandates that the "Committee shall ... adopt rules and regulations necessary for the operation and maintenance of the Fund, including rules to establish: (i) the nature of losses to be paid from the Fund...."

The regulations adopted by the Committee, and in effect during the events of this case, contain provisions defining an "insured" for purposes of liability coverage under the self-insurance program. The regulations also contain numerous "exclusions" from coverage. The provisions defining an insured are as follows (emphasis added):

"1. All elected or appointed officials, deputies, employees, members of special boards or commissions of the County, volunteers and aides, and officials and employees of the County Department of Health, employees of the Public Libraries of Annapolis and Anne Arundel County, Inc., and Volunteer Firefighters of Volunteer Fire Companies and Rescue Squads, *while acting within the scope of their duties as such or on behalf of the County.*

2. Police dogs with respect to the ownership, possession, custody, maintenance or use and animals while in the possession of the Anne Arundel County, Inspections and Permits, Animal Control Division.

3. Any person or organization for whom the County is obligated by agreement to provide insurance.

4. Volunteer Fire Companies and Rescue Squads for which the County has agreed to provide insurance.

5. Paid employees of the Sheriff's Department excluding the Sheriff.

6. Temporary Deputy Sheriffs appointed in a bona fide emergency only within the scope of the specific emergency."

The exclusions from coverage in the regulations consist of nine paragraphs, two of which may be relevant in the present case. Exclusions three and nine state:

"3. Claims brought against an individual County employee or individual otherwise insured which are as a result of willful actions or gross negligence on the part of that individual.

\* \* \*

9. Punitive damages for or on behalf of any public official or employee of the County who is a defendant in a civil rights action."

The collective bargaining agreement, in effect during the pertinent time periods, between Anne Arundel County and the Fraternal Order of Police, which represented the collective bargaining unit of which Ziegler was a member, stated as follows (emphasis added):

*"Section 13.6—Civil Liability Coverage*

County agrees to provide employees with legal defense services and with indemnification for civil liability in a fashion *consistent* with both Article 2, Title 5 (Self–Insurance Fund) of the County Code and the policies, rules, and *regulations of the Self–Insurance Fund Committee.*

County agrees to provide employees with legal defense services and legal counsel without cost in any civil case where the plaintiff alleges that an officer should be held liable for acts alleged to be within the scope of his/her employment and/or his/her official capacity. Indemnification of compensatory damage will also be provided to any member of the unit who is made a defendant *in litigation arising out of acts within the scope of his/her employment.*"

### B.

Wolfe concedes "that the scope of an officer's employment does not encompass the rape of a citizen" (petitioner's brief at 20) and that neither the Local Government Tort Claims Act nor the first paragraph defining an insured in the Anne Arundel County self-insurance regulations require the County to pay the tort judgment against Ziegler. In fact, Wolfe insists that the Court of Special Appeals "clearly erred" in mentioning the Local Government Tort Claims Act as one of the "source[s]" of the Anne Arundel County self-insurance program (*id.* at 18). Wolfe also acknowledges "that Ziegler did not qualify as an 'Insured' as defined" in paragraph one of the self-insurance regulations (*id.* at 22).

Wolfe's argument is that the Anne Arundel County self-insurance program covered certain actions of an employee outside of the scope of employment, including the tortious and criminal conduct here involved. Wolfe relies upon the third definition of an "insured" in the self-insurance regulations which encompasses "any person or organization for whom the County is obligated by agreement to provide insurance." Next, Wolfe points to the collective bargaining agreement between the County and the Fraternal Order of the Police, and argues that the collective bargaining agreement qualifies as an "agreement" within the third definition of "insured" in the self-insurance regulations.

Wolfe then turns to the collective bargaining agreement's language which states that

"[i]ndemnification of compensatory damages will also be provided to any member of the unit who is made a defendant in litigation arising out of acts within the scope of his/her employment."

According to Wolfe, the traffic stop was an act by Ziegler within the scope of his employment, and the tort suit constituted "litigation arising out of" that traffic stop within the meaning of the above-quoted language in the collective bargaining agreement. In arguing that the litigation, based upon rape and battery, arose out of the traffic stop, Wolfe utilizes a "but for" test. She states that, "but for" Ziegler's position as a police officer making the traffic stop, the rape and battery would not have occurred.[4] The Maryland authority upon

---

4. Wolfe's theory is set forth in her brief as follows (petitioner's brief at 29–30):

"The traffic stop of Ms. Jones [Wolfe] on suspicion that she was driving while intoxicated was unquestionably an act within the scope of his [Ziegler's] employment. *Sawyer v. Humphries*, 322 Md. 247, 260, 587 A.2d 467 (1991) ('[o]rdinarily when stopping a motorist * * * a police officer is acting within the scope of his employment'). *See Montgomery County v. Wade*, 345 Md. 1, 17 n. 8, 690 A.2d 990 (1997) ('any' stop executed by a police officer, on-duty or off-duty, 'is part of that officer's regular employment'). It was also within the scope of Ziegler's employment and a legitimate 'police function' for him to ask an inebriated motorist to enter his police vehicle and to drive it from the location of the traffic stop to her home, where he dropped her off. *See, id.* at 17, 690 A.2d 990 ('an officer utilizing a PPV off duty is performing a police function'). The County benefitted from Ziegler's use of his marked police vehicle for such purpose, in the form of 'increased police presence in the County' (*id.*) and in the promotion of traffic safety by transporting an impaired driver who otherwise might have endangered the public by operating her own vehicle. Once Ms. Jones entered Ziegler's police cruiser, as directed by Ziegler, she was effectively in his custody and continually subject to his authority as a police officer. While Ziegler's detour to a secluded location and rape of Ms. Jones was undoubtedly a misuse of that authority and outside the scope of his employment, 'but for' his position as a County police officer he could not have gained access to and control of his victim and the opportunity to rape her inside the police vehicle authorized for his use by the County. The chain of events culminating in the rape was incidental to, and inextricably connected with, Ziegler's initial performance of legitimate police functions and his continuing exercise of authority as a police officer, so as to incur liability as a defendant in 'litigation arising out of acts within the scope' of his official law enforcement duties."

which Wolfe primarily relies is a workers' compensation case, *Montgomery County v. Wade,* 345 Md. 1, 690 A.2d 990 (1997).

Wolfe further argues that we should not consider paragraphs three and nine of the exclusions from coverage set forth in the self-insurance regulations. She points out that the trial court, in granting summary judgment on the ground that Ziegler was not acting within the scope of his employment and thus was not an "insured," did not reach Anne Arundel County's alternative argument based on the exclusions. Wolfe relies on the principle that "we do not ordinarily undertake to sustain a summary judgment by ruling on a ground not ruled upon by the circuit court." *Shpigel v. White,* 357 Md. 117, 126, 741 A.2d 1205, 1210 (1999). *See also, e.g., Eid v. Duke,* 373 Md. 2, 10–11, 816 A.2d 844, 849 (2003); *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001); *Paine-Webber v. East,* 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001). Wolfe also asserts that the exclusion for "willful actions" is "ambiguous" and "renders unintelligible the coverage provided by the rules" (petitioner's brief.at 38, 40).

With regard to Anne Arundel County's argument based on *res judicata* or collateral estoppel, Wolfe again invokes the principle that an appellate court will ordinarily review a grant of summary judgment only on the grounds relied upon by the trial court.[5]

Anne Arundel County defends the position of both courts below that insurance coverage for Ziegler's acts depended upon his status under paragraph one of the regulations defining an "insured," and that Ziegler was not an insured under paragraph one because his tortious and criminal acts were not within the scope of his employment. The County also disagrees with Wolfe's interpretation of the collective bargaining agreement. In addition, as indicated above, the County relies

---

5. It is questionable whether this principle is applicable when this Court's grant of certiorari explicitly embraces an issue not ruled upon by the trial judge in granting summary judgment. *Cf. Robinson v. Bunch,* 367 Md. 432, 440–441, 788 A.2d 636, 641–642 (2002), and cases there cited.

upon the exclusions in the self-insurance regulations and principles of *res judicata* or collateral estoppel.

Although we believe that there is much force in Anne Arundel County's arguments based on the exclusions and principles of *res judicata* or collateral estoppel, we shall not reach those issues.

## III.

We reject Wolfe's interpretation of the Anne Arundel County self-insurance regulations as well as her interpretation of the collective bargaining agreement.

## A.

Initially, we agree with Anne Arundel County and both courts below that Ziegler was an "insured" under paragraph one of the County's self-insurance regulations and was not covered by paragraph three. Paragraph one unequivocally states that "[a]ll ... employees ... of the County" are insureds, and Ziegler was clearly an employee of the County. Furthermore, as we have recently emphasized, " '[a]ll' means 'all.' " *McCarter v. State,* 363 Md. 705, 716, 770 A.2d 195, 201 (2001). In light of the definition of "insured" in paragraph one, covering *all* employees of Anne Arundel County, there would be no reason for the additional definitions in paragraphs two through six to duplicate the coverage set forth in paragraph one and encompass particular groups of Anne Arundel County employees.

Moreover, the structure of all six paragraphs defining insureds makes it clear that paragraphs two through six were designed to cover special entities or persons other than regular Anne Arundel County government employees. Thus, paragraph two covers police dogs and certain animals, and paragraph four covers volunteer fireman and rescue workers who, as volunteers, are not regular county employees. Paragraphs five and six encompass employees of the Sheriff's Office and temporary deputy sheriffs. Under Maryland law, a Sheriff's

office is a state agency, and deputy sheriffs are state officials, not county officials.[6]

 Consistently with paragraphs two, four, five, and six of the definitions of "insured" in the self-insurance regulations, the reference to "any person or organization for whom the County is obligated by agreement to provide insurance" in paragraph three was also not intended to embrace regular county employees covered by paragraph one. Instead, as suggested by Anne Arundel County in its brief, paragraph three was likely intended to refer to entities or persons, such as the Board of Education or the Anne Arundel Community College, including their employees, which are not part of the county government, but with which Anne Arundel County is authorized to enter self-insurance pooling agreements. *See* Article 2, §§ 5–101(a) and (c) of the Anne Arundel County Code.

Finally, Anne Arundel County's obligation to pay certain tort judgments against its employees, including county police officers, is based on the Local Government Tort Claims Act and the Anne Arundel County Code. It is an obligation imposed by law and not simply one undertaken by agreement.

A critical part of the definition of an insured in paragraph one of the insurance regulations is that employees are covered only "while acting within the scope of their duties as such or on behalf of the County." Wolfe concedes that Ziegler's tortious and criminal conduct was not within the scope of his duties as a police officer. Moreover, it is clear from our cases that he was not acting within the scope of his employment. *See, e.g., Ennis v. Crenca,* 322 Md. 285, 293–296, 587 A.2d 485, 489–491 (1991); *Sawyer v. Humphries,* 322 Md. 247, 254–260, 587 A.2d 467, 470–473 (1991), and cases there cited.

---

**6.** *Prince George's County v. Aluisi,* 354 Md. 422, 434, 731 A.2d 888, 895 (1999) ("Sheriffs and deputy sheriffs are state officials, not local government officials"); *Ritchie v. Donnelly,* 324 Md. 344, 357, 597 A.2d 432, 438 (1991); *Rucker v. Harford County,* 316 Md. 275, 281, 558 A.2d 399, 402 (1989) ("[A]s a matter of Maryland law, the Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County").

## B.

■ Even if paragraph three of the self-insurance regulations were applicable to Ziegler, and even if the collective bargaining agreement were deemed controlling, the result would be the same.[7]

First, the collective bargaining agreement expressly states that "indemnification" of employees for civil liability shall be "consistent with . . . the policies, rules, and regulations of the Self–Insurance Fund Committee." It is clear that the policies and regulations of the Self–Insurance Fund Committee are to cover employees only "while acting within the scope of their duties. . . ."

Second, we do not agree that the subsequent language of the collective bargaining agreement, referring to "litigation arising out of acts within the scope of his/her employment," has the meaning advocated for by the petitioner Wolfe.

Wolfe correctly observes "that the words 'arising out of' require a showing of a causal relationship" and that, in some contexts, the words indicate a broader causal relationship than "proximate cause" (petitioner's brief at 26). *See, e.g., Nation-*

---

**7.** In this connection, it is noteworthy that the Local Government Tort Claims Act, Maryland Code (1974, 2002 Repl.Vol.), § 5–303(c) provides as follows:

"(c) *Punitive damages; indemnification.*—(1) A local government may not be liable for punitive damages.

(2)(i) Subject to subsection (a) of this section and except as provided in subparagraph (ii) of this paragraph, a local government may indemnify an employee for a judgment for punitive damages entered against the employee.

(ii) A local government may not indemnify a law enforcement officer for a judgment for punitive damages if the law enforcement officer has been found guilty under Article 27, § 731 of the Code as a result of the act or omission would constitute a felony under the laws of this State.

(3) A local government may not enter into an agreement that requires indemnification for an act or omission of an employee that may result in liability for punitive damages."

Subsections (c)(2) and (c)(3) were added by Ch. 303 of the Acts of 1992, effective October 1, 1992. The assault upon Ms. Wolfe occurred before that time, and, consequently, Anne Arundel County makes no argument based on the above-quoted provisions.

*al Indemnity v. Ewing,* 235 Md. 145, 149, 200 A.2d 680, 682 (1964). Wolfe cites no opinion by this Court, however, which takes the position that "arising out of" always or normally signifies an unlimited "but for" causal relationship.

Moreover, the causal relationship referred to in the collective bargaining agreement is between the litigation and certain specified acts, namely "acts within the scope of [Ziegler's] employment." The litigation arose out of the "act" of raping Ms. Wolfe and not out of the "act" of the traffic stop. The petitioner's "but for" causation argument might have slightly more plausibility if the collective bargaining agreement had referred to litigation based on "acts arising out of the employment." The language of the agreement, however, requires that the "acts" be "within the scope of his/her employment."

Finally, Wolfe's reliance upon *Montgomery County v. Wade, supra,* 345 Md. 1, 690 A.2d 990, is misplaced. *Wade* involved an off-duty police officer who was operating her county-furnished patrol car on a personal errand when she was injured in an automobile accident. In holding that the police officer's accidental injury arose out of and in the course of her employment for purposes of the Maryland Workers' Compensation Act, this Court pointed out that Montgomery County permitted, and in fact encouraged, police officers to use their patrol cars while off-duty pursuant to comprehensive regulations, that her use of the car was within the County's regulations, that the officer was expected to respond to specified situations when using the patrol car while off-duty, that the County's authorizing the use of patrol cars by off-duty officers was designed to increase police presence in the community, and that the officer's use of the patrol car fell within the dual purpose doctrine recognized in workers' compensation law.

The situation in the present case bears little resemblance to the facts in *Montgomery County v. Wade.* Ziegler's detour to the church parking lot and assault upon Ms. Wolfe was neither authorized nor permitted nor within any dual purpose doctrine. It was criminal. If Ms. Wolfe had been able to injure Ziegler by resistance when he was assaulting her, Ziegler's

injury would clearly not be covered by the Maryland Workers' Compensation Act. *See, e.g., Scherr v. Miller,* 229 Md. 538, 546, 184 A.2d 916, 921 (1962) (If "the claimant had stepped aside from his employment to initiate . . . the alleged assault, then the . . . claimant is not entitled to recover" workers' compensation benefits).

In sum, both the Court of Special Appeals and the Circuit Court for Anne Arundel County correctly held that Ziegler's attack upon Ms. Wolfe was not covered by the Anne Arundel County self-insurance program.

*JUDGMENT AFFIRMED, WITH COSTS.*