**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-2357**

---

SELECTIVE INSURANCE COMPANY,

                                    Plaintiff - Appellee,

        versus

THOMAS L. OGLEBAY; CARMELLA BONE, Individually
and as next friend and legal guardian of
Tracey M. Mayhew,

                                    Defendants - Appellants.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Andre M. Davis, District Judge. (CA-05-
951)

---

Argued: September 20, 2006          Decided: July 17, 2007

---

Before MICHAEL, Circuit Judge, N. Carlton TILLEY, Jr., United
States District Judge for the Middle District of North Carolina,
sitting by designation, and Thomas E. JOHNSTON, United States
District Judge for the Southern District of West Virginia, sitting
by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Byron Leslie Warnken, WARNKEN, L.L.C., Towson, Maryland,
for Appellants. Stephen Salvatore McCloskey, SEMMES, BOWEN &
SEMMES, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michael
Patrick Lytle, WARNKEN, L.L.C., Towson, Maryland; Stephen Allen
Markey, III, Towson, Maryland, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIUM:

Carmella Bone, as assignee of Thomas Oglebay's claim, appeals the ruling of the district court granting summary judgment for Selective Insurance Company ("Selective"). The declaratory judgment action was brought by Selective seeking a ruling that Selective did not have a duty to defend under an insurance policy issued by Selective. We affirm the opinion of the district court denying coverage.

## I.

In accordance with the agreed statement of facts submitted by the parties, the facts of the case are as follows: Selective issued a Commercial General Liability policy to A. Widmeyer Driving School("Widmeyer"). (Joint Appendix at 50, ¶1). Widmeyer is the only named insured on the policy. (JA at 50,¶ 2). The Selective policy does not specifically identify Thomas Oglebay as an "insured" under the policy. (JA at 50,¶ 3). The definition of the term "insured" includes "employees . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (JA at 50, ¶ 4). The Selective policy provides coverage for damages due to "bodily injury" and "personal and advertising injury." (JA at 50,¶¶ 5-7).

Widmeyer employed Mr. Oglebay to teach driving instruction. (JA at 51,¶ 8). Tracey Mayhew is a mildly mentally retarded adult

who was enrolled at Widmeyer by her mother, Carmella Bone, pursuant to a special program where individuals with learning disabilities could learn to drive. (JA at 51,¶ 9).

In March and April 2002, when Mr. Oglebay was supposed to be teaching Ms. Mayhew how to drive, Mr. Oglebay sexually assaulted Ms. Mayhew. (JA at 51,¶ 10). In particular, following classes at the driving school after other students had left, Mr. Oglebay began to sexually abuse Ms. Mayhew. (JA at 51,¶ 10). Mr. Oglebay continued his activity during driving sessions in a vehicle owned by Widmeyer and at Mr. Oglebay's personal residence. (JA at 51,¶ 10, 17). All contact between Mr. Oglebay and Ms. Mayhew occurred during the period of time that Ms. Mayhew was scheduled for driving instruction. (JA at 53,¶ 18). Mr. Oglebay has stated that he did not expect or intend to injure Ms. Mayhew through his conduct. (JA at 53,¶ 19).

When Ms. Bone became aware of the abuse, she filed a civil action in Maryland state court against Mr. Oglebay and Widmeyer alleging "various acts of vulnerable adult abuse, sexual assault, battery, and rape upon Ms. Mayhew." (JA at 51,¶ 10). The state court entered summary judgment in favor of Ms. Bone on a false imprisonment claim. (JA at 53,¶ 20). After the entry of summary judgment, Ms. Bone and Mr. Oglebay agreed to a consent judgment against him in the amount of $300,000 apportioned as follows: $275,000 for emotional pain and suffering sustained as a result of

the false imprisonment and negligence claims and $25,000 for Ms. Bone for past and future economic damages. (JA at 54,¶ 21). Ms. Bone agreed not to attempt to collect anything in excess of $10,000 personally from Mr. Oglebay in exchange for Mr. Oglebay's assignment of rights against Selective. (JA at 54,¶ 22). At all times during the course of the state tort suit, Selective took the position that it had no duty to defend or indemnify Mr. Oglebay. (JA at 54,¶ 23).

Following entry of judgment in the state court action, Selective filed a declaratory judgment action in the United States District Court for the District of Maryland seeking a declaration of coverage under the policy. Both parties filed motions for summary judgment.

The district court granted Selective's motion for summary judgment holding that there was no coverage because Mr. Oglebay was not an "insured" as that term is defined in the policy. At the district court, the parties agreed that under Maryland law, the intentional acts committed by Mr. Oglebay were not "within the scope of his employment" and that the dispositive issue before the district court was whether Mr. Oglebay's acts were committed "while performing duties related to the conduct" of Widmeyer (the "while performing duties" provision).

The district court noted that the "while performing duties" provision "must be interpreted consonant with, even if more broadly

5

than, the 'scope of employment' phrase." Ultimately, however, the district court found there was no coverage under the policy. In particular, the district court noted that the acts occurred during Mr. Oglebay's working hours, but rejected the argument that the "while performing duties" clause was broad enough to encompass intentional sexual misconduct. Ms. Bone timely filed a Notice of Appeal. We review de novo the district court's grant of summary judgment. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir.2006) (en banc).

## II.

Under Maryland law, an insurer is obligated to provide its insured with a defense to a tort action when there exists a potentiality that the claim could be covered by the policy. Montgomery County Bd. of Educ. v. Horace Mann Ins. Co., 383 Md. 527, 860 A.2d 909, 915 (2004); Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 225, 695 A.2d 566, 570 (1997)(explaining that "the mere possibility that the insurer will have to indemnify triggers the duty to defend").

This potentiality determination typically involves a two part test: (1) what coverage and defenses exist under the terms of the policy; and (2) whether the allegations in the tort action potentially bring the tort claim within the policy's coverage. St. Paul Fire & Mar. Ins. v. Pryseski, 292 Md. 187, 193, 438 A.2d 282,

6

285 (1981). The first factor "focuses upon the language and requirements of the policy, and the second [factor] focuses upon the allegations of the tort suit." Id. Moreover, it is well-established under Maryland law that any doubt as to whether there is a potentiality of coverage under an insurance policy should be "resolved in favor of the insured." See U.S.F. & G. v. Nat'l Pav. Co., 228 Md. 40, 55, 178 8 A.2d 872, 879 (1962).

The question before this court is whether the district court properly concluded that Mr. Oglebay's actions were not acts committed "while performing duties related to the conduct of" Widmeyer's business. Ms. Bone asserts that the "while performing duties" provision must be construed more broadly than the "scope of employment" provision and that when construed broadly, the "while performing duties" provision would provide coverage for Mr. Oglebay's conduct. Specifically, Ms. Bone asserts that because all of Mr. Oglebay's misconduct was committed during the time that Mr. Oglebay was supposed to be teaching Ms. Mayhew how to drive, such conduct was committed while Mr. Oglebay was performing duties related to the conduct of his employer. Essentially, Ms. Bone claims that Mr. Oglebay's tortious conduct is covered under the "while performing duties" provision because there is a temporal-spatial connection between his duties as a Widmeyer driving instructor and his tortious conduct.

7

Maryland courts have not yet interpreted the "while performing duties" provision specifically at issue in the case.  In Fed. Ins. Co. v. Ward, 166 Fed. App'x 24 (4th Cir. 2006) (unpublished opinion), we had occasion recently to address the interpretation of a nearly identical insurance policy provision under Virginia law and find that approach instructive here.

The question before the court in Ward was whether an employee who was finishing her day's work and locking up the business' premises was acting "while performing duties related to the conduct of [the employer's] business" when she flicked her cigarette ashes into a wastebasket, resulting in a fire that destroyed the building.  We conducted our analysis by identifying the discreet act in question, flicking cigarette ashes, and comparing that with her duties as an employee: "Indeed, because the act of smoking was not within the Employees' job description or needed to perform a job-related duty, the subsidiary act of flicking ashes also cannot be characterized as the exercise of a duty."

In this case, the act complained about is false imprisonment arising from sexual abuse and sexual assault.  There is no suggestion that sexual contact in any form constituted part of Oglebay's job description nor that the subsidiary act of accomplishing it in an assaultive way could be characterized as the exercise of a duty.

8

To perform the analysis using the more expansive temporal-spatial criteria rejected by the panel in Ward would result in coverage for a "virtually limitless number of activities" beyond the anticipation of either the insurer or the employer simply because they "coincide with a job-related duty." Ms. Bone cites no authority suggesting that the Maryland courts would adopt that approach, and we have found none.

In Wolfe v. Anne Arundel County, 374 Md. 20, 821 A.2d 52 (2003), the Court of Appeals of Maryland specifically rejected a temporal-spatial argument similar to the argument advanced by Ms. Bone. The Wolfe court had to determine whether a tort suit resulting from a rape committed by an on-duty police officer was covered by a collective bargaining agreement that provided coverage for "litigation arising out of acts within the scope of his/her employment." Id. at 31, 821 A.2d at 58. The rape victim in Wolfe had asserted that "'but for' [the officer's] position as a county police officer he could not have gained access to and control of his victim and the opportunity to rape her inside the police vehicle." Id. at 32 n.4, 821 A.2d at 59 n.4.

The Wolfe court rejected this "but for" argument noting that "the litigation arose out of the 'act' of raping Ms. Wolfe and not out of the 'act' of the traffic stop." Id. at 36, 821 A.2d at 61. The Wolfe case involved interpretation of a clause containing the phrase "scope of employment" and thus is not dispositive of the

issue before us, namely interpretation of the more broad "while performing duties" provision. However, the <u>Wolfe</u> court's rejection of a temporal-spatial standard is instructive in predicting the manner in which Maryland courts would interpret the "while performing duties" provision at issue here.

In this case, Widmeyer's business was providing driving instruction. As a Widmeyer employee, Mr. Oglebay's duties were to teach his students, such as Ms. Mayhew, how to drive. It is undisputed, however, that Mr. Oglebay was not teaching Ms. Mayhew how to drive during the times that Ms. Mayhew was with him. Rather, Mr. Oglebay sexually assaulted Ms. Mayhew in lieu of performing his duties, i.e. providing driving instruction. Mr. Oglebay's sexual assault of Ms. Mayhew, even if committed during the time or at a place related to his employment as a driving instructor, was certainly not the performance of a duty related to the conduct of his employer's business.

## III.

Ms. Bone also argues that the district court erred by "ignoring the underlying trial court's finding on the merits that Oglebay falsely imprisoned Tracey Mayhew which was specifically covered under the policy." (JA at 295). In support of this issue, Ms. Bone refers to a portion of the policy that specifically provides coverage for claims of false imprisonment. Ms. Bone

10

asserts that because the complaint in the underlying tort action specifically included a claim for false imprisonment there was at least the possibility of coverage, thus triggering the duty to defend.

As noted above, application of the potentiality standard under Maryland law requires consideration of two questions. First, what coverage and defenses exist under the terms of the policy? Second, do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

Here, the policy provides coverage for damages resulting from "false imprisonment." The complaint in the underlying tort suit included a section entitled "Facts Applicable to All Counts." (JA at 133-34). The factual recitation in this portion of the complaint focuses exclusively on the sexual misconduct of Mr. Oglebay. Id. Moreover, the "False Imprisonment" section of the complaint, Count III, states that "Oglebay's repeated acts of sexual assault and battery and vulnerable adult abuse, as described previously in this Complaint, constituted intentional acts of force or threats of force that restrained Tracey Mayhew." JA at 136. Thus, although the complaint identifies a claim for "false imprisonment," the factual allegations supporting the false imprisonment claim arise exclusively from the sexual misconduct of Mr. Oglebay. As discussed in detail above, Mr. Oglebay is not an insured under the policy for such conduct.

11

The trial court did not err by not considering whether the fact that false imprisonment is covered under the policy would create a potentiality of coverage triggering the duty to defend.

The judgment of the district court is

AFFIRMED.
