**PARTS INCORPORATED,**
**et al., Plaintiffs**

v.

**UTICA MUTUAL INSURANCE**
**CO., Defendant.**

**Civil Action No. RWT 07–2882.**

United States District Court,
D. Maryland.

Feb. 27, 2009.

Henri C. Delozier, Jr., Helfrich and Delozier, Bowie, MD, Francis Rollin Jones, Sasscer Clagett and Bucher, Upper Marlboro, MD, for Plaintiffs.

Lon Arthur Berk, Michael Scott Levine, Walter J. Andrews, Hunton and Williams LLP, McLean, VA, for Defendant.

### MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

### I. BACKGROUND

The Plaintiffs Dwight Puckett and B & J Auto Supply ("B & J") filed an insurance coverage action to recover the fees and costs that they incurred in defending a lawsuit. The lawsuit in question had been filed against them on July 2, 2005 by Amy Blankenship, who was a seventeen-year-old high school junior at the time she worked as a stock person at B & J.

She filed suit against Puckett and B & J in the Circuit Court for Prince George's County in a case entitled *Blankenship v. B*

& J Auto Supply, Inc., et al., Case No. CAL–05–1101. Her suit against B & J and Puckett alleged that she had been sexually harassed by Puckett, who was her supervisor and manager, from June to October of 2003. The harassment was alleged to have culminated on October 1, 2003, when Puckett followed Blankenship into a basement area of B & J, grabbed her hand, said that he wanted her to give him a "hand job," but that when she got scared, and froze up, he grabbed her hand and helped her the whole time.

Prior to the incident in question, the Defendant Utica Mutual Insurance Company ("Utica") had issued Business Owners Insurance Policy Number BOP3175192 ("Policy")to B & J for the period May 1, 2003 to May 1, 2004. The Policy provided third-party liability coverage subject to certain conditions and exclusions.

On July 28th 2005, the Plaintiffs notified Utica of the suit filed by Ms. Blankenship. Utica conducted an investigation and denied that it had a duty to defend the suit, citing certain exclusions under the Policy. Correspondence between the parties dealing with the coverage issue ensued.

On September 14th 2006, in the underlying action brought by Ms. Blankenship, the Circuit Court for Prince George's County granted summary judgment to B & J on all counts, with the exception of one remaining count for negligent retention and supervision. Thereafter, Ms. Blankenship dismissed her suit. No settlement was reached with her, nor was any payment made to her. On July 30, 2007, B & J and Puckett filed a declaratory judgment action against Utica in the Prince George's County Circuit Court, and Utica removed the case to this court on the basis of this Court's diversity jurisdiction.

## II. DISCUSSION

There are three motions pending before the Court. The main motion is the Defen-

dant's Motion for Summary Judgment [Paper No. 23]. There is also a related Plaintiffs' Motion to Strike Defendant's Response [Paper No. 40] and the Plaintiffs' Motion to Supplement the Record [Paper No. 47].

First, with regard to the Plaintiffs' Motion to Strike the Defendant's Response [Paper No. 40], the Court will deny that motion. In this case, the Response was not filed by the deadline of May 2, 2008, in accordance with the briefing schedule. There was, however, some understandable confusion because the docket entry generated an automatic response time that was longer than the time provided for in the order, namely May 9, 2008. The Court will not strike the response under those circumstances. At worst, this constitutes excusable neglect, and the Court finds no prejudice and will therefore deny that motion.

The Plaintiffs have also filed a Motion to Supplement the Record [Paper No. 47]to provide the deposition testimony of Scott Rose along with certain records. In order to have all the information relevant to this case, the Court will grant that motion.

## A. Standard of Review

The principal motion is Defendant's Motion for Summary Judgment [Paper No. 23]. Summary judgment is proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir.2006). A dispute of material fact is genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

The Court may rely upon only those facts that are supported by the record— not simply assertions in the pleadings—in order to fulfill its affirmative obligation to prevent factually unsupported claims or defenses from proceeding to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovants, and all justifiable inferences are to be drawn in their favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## B. Applicable Maryland Law

This case involves not the question of the obligation to indemnify but, rather, the question of the duty to defend. These are two significantly different questions under Maryland law, which governs the dispute before the court.

Under Maryland law, the insurer's duty to defend is a contractual duty arising out of terms of the liability insurance policy and is broader than the duty to indemnify. *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 695 A.2d 566, 569 (1997). The insurer has a duty to defend its insured for all claims that are potentially covered. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975).

Even if a plaintiff does not allege facts that clearly bring the claim within or without policy coverage, the insurer must still defend if there is a potentiality that the claim could be covered by the policy. *Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 852 A.2d 98, 106 (2004). This requires the Court to make a two-part inquiry. *St. Paul Fire & Marine Ins. v. Pryseski,* 292 Md. 187, 438 A.2d 282, 285 (1981). First, what is the coverage and what are the defenses under the terms of the insurance policy? *Id.* Second, do the allegations in the underlying tort action potentially bring the tort action within the policy coverage? *Id.*

█ Maryland has historically and typically followed what is referred to by some commentators as "the eight corners rule." *Id.* This rule requires the Court to consider only the underlying complaint and the insurance policy to determine the potentiality of coverage. *Id.* This rule has been modified to permit insureds (but not insurers) to produce extrinsic evidence for the purpose of demonstrating the potentiality of coverage. *Aetna Cas. & Surety Co. v. Cochran,* 337 Md. 98, 651 A.2d 859, 866 (1995). Any doubt as to whether there is a duty to defend must be resolved in favor of the insured. *Walk,* 852 A.2d at 106–07. If any claims alleged in the complaint potentially come within the policy coverage, the insurer is then obligated to defend all claims. *Utica Mut. Ins. Co. v. Miller,* 130 Md.App. 373, 746 A.2d 935 (Md.Ct.Spec.App.2000). However, an insured may not extract stray phrases out of letters and discovery to transform allegations into coverage-triggering claims. *Moscarillo v. Prof. Risk Mgmt. Servs., Inc.,* 398 Md. 529, 921 A.2d 245, 256 (2007) (quoting *Walk,* 852 A.2d at 105).

## C. The Duty to Defend Dwight Puckett

█ The Court will first consider Plaintiff Dwight Puckett's claim. He contends that Utica had a duty to defend him. Utica asserts that it properly declined to defend him because Puckett's alleged sexual harassment of Blankenship was unrelated to his employment duties, as a result of

which, Puckett did not qualify as an "insured" under the Policy.

The Policy defines "insured" as "an organization other than the partnership, joint venture or limited liability company," as well as its "employees or managers, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Def.'s Mot. for Summ. J., Ex. A at 105. Moreover, employees are not considered "insureds" for bodily injury or personal injury to a co-employee while that co-employee is either in the course of his or her employment or performing duties related to the conduct of insured's business. *Id.*

It cannot seriously be disputed that the alleged sexual act and sexual harassment were not acts committed within the scope of Puckett's employment by B & J. The denials by Puckett of the allegations of the complaint do not establish the duty to defend in and of itself. This case is to be contrasted with *Aetna Cas. & Surety Co. v. Cochran,* 337 Md. 98, 651 A.2d 859, 860 (1995), in which the insured adduced extrinsic evidence that supported the affirmative defense of self-defense, which was an exception to the Intentional Acts exclusion in the liability policy, as it related to the assault case brought against him. Here, however, Puckett's bare denials of the allegations against him do not constitute a defense that would bring the suit brought by Ms. Blankenship within the potential coverage of the contract.

The question of the duty to defend turns upon the nature of the claims—not the merits of those claims. *See Reliance Ins. Co. v. J.L. Hickman & Co.,* No. 97–3194, 1999 U.S. Dist. LEXIS 22602 (D.Md. Sept. 17, 1999) (holding that the insurer properly denied defense because the insured's vigorous denial of their purported dishonest conduct, which would have excluded cover-

age under their policy, were immaterial given that such allegations were made and therefore the policy exclusion was triggered).

The case before the Court is also somewhat analogous to *Selective Ins. Co. v. Oglebay,* 242 Fed.Appx. 104, 108 (4th Cir. 2007) (unpublished) (per curiam). In that case, a driving instructor was alleged to have sexually molested a student, and the Fourth Circuit concluded that a driving instructor was not an insured under the policy and thus the insurer did not have a duty to defend because the molestation was not an act of employment as contemplated by the policy. *Id.* Although Puckett's acts were committed during the time or at the place related to his employment, those acts were certainly not the performance of a duty related to the conduct of B & J's business, a finding that is very much consistent with the reasoning employed by the Fourth Circuit. *Id.* Another case that is instructive on this issue is *Wolfe v. Anne Arundel County,* 374 Md. 20, 821 A.2d 52, 61–62 (2003). That case held that a police officer's rape of a motorist, whom he had pulled over for a traffic violation, was not an act committed within the scope of his duties because it was unrelated to his performance of legitimate police functions. *Id.*

Accordingly, the Court concludes that, for purposes of this case, Puckett is simply not an insured. There is no potentiality that the claims come within the coverage of the contract, and the Court will grant Utica's Motion for Summary Judgment as to Puckett.

**D. The Duty to Defend B & J**

Moving to B & J's claims, Utica contends that there are three exclusions that bar its duty to defend B & J under the Policy. The Court need determine only whether one exclusion applies as that

would be sufficient to bar coverage under the Contract. *See Harbor East–Office, LLC v. Travelers Cas. & Sur. Co.,* No. 98–2329, 1999 WL 672154, at *4 (4th Cir. Aug. 30, 1999) (holding that the Court was not required to evaluate all of the exclusions under the policy when at least one of those exclusions clearly barred coverage). The Court of Appeals of Maryland has noted with approval the concept that although exclusions are to be construed strictly, "where the insurer properly and unambiguously uses language in its exclusion, the clear and specific terms must be enforced since the insurer can not be held liable for risks it did not assume ... [because] the insurer may freely limit liability and impose reasonable conditions upon the obligations it assumes by contract, provided that the exclusion does not violate statutory mandates or public policy." *Megonnell v. United Servs. Auto. Ass'n,* 368 Md. 633, 796 A.2d 758, 772 (2002) (quoting Eric Mills Holmes & Mark S. Rhodes, 2 *Holmes's Appleman on Insurance* 276–81 (2d ed. 1996)). The Court will address each exclusion in turn.

### i. Employment–Related Practices Exclusion

■ The first exclusion that Utica relies upon is the Employment–Related Practices Exclusion. Def.'s Mot. for Summ. J., Ex. A, at 72. This exclusion provides that the Policy does not apply to bodily injury or personal injury to a person arising out of "any employment-related practices, policies, acts, or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person." *Id.* This exclusion applies where the insured may be liable as an employer or in any other capacity and to any obligations to share damages with or repay someone else who must pay damages because of the injury.

There do not appear to be any recent Maryland cases interpreting the application of this particular exclusion, but the plain and unambiguous language of the exclusion, in addition to decisional law from other circuits, supports a finding that this decision bars exclusion from B & J under the Policy. In a similar case, the Eighth Circuit held that the claims (sexual harassment, assault and battery, intentional and negligent infliction of emotional distress, negligent hiring and supervision, whistle blower, and aiding and abetting) brought by a group home's employees who alleged that they were sexually harassed by one of the home's residents "turn[ed] on" employment practices. *Agricultural Ins. Co. v. Focus Homes, Inc.,* 212 F.3d 407, 412 (8th Cir.2000). Moreover, the Eighth Circuit recognized that similar cases in other jurisdictions interpreting similarly-worded Employment–Related Practices Exclusions have applied those exclusions to bar coverage. *Id.* at 412. As such, the Eighth Circuit applied the exclusion to bar coverage. *Id.; see also Capitol Indemnity Corp. v. 1405 Assocs., Inc.,* 220 F.Supp.2d 1045 (E.D.Mo.2002).

This Court concludes that the plain and unambiguous language of the employment-related practices exclusion supports a finding that the exclusion applies in this case to bar coverage for B & J. The complaint filed by Ms. Blankenship alleges a bodily injury, i.e., the physical battery leading up to and including the sexual act that arose out of Puckett's employment practices of harassment and humiliation that was directed at her as well as B & J's employment-related omission or negligent supervision of Puckett in its failure to take immediate and appropriate corrective action when on notice of Puckett's sexually harassing behavior. Compl. ¶¶ 19, 24 & 43.

These claims arise out of and from B & J's alleged failure to properly supervise and restrain Blankenship's supervisor during her employment with B & J. Although the exclusion does not explicitly list supervision and retention, the exclusion's use of the term "such as" indicates that the list of employment-related practices is neither exhaustive nor exclusive. It is also noteworthy that the list includes harassment as one of the enumerated acts that precludes coverage. Def.'s Mot. for Summ. J., Ex. A, at 72. Accordingly, the Court concludes that Employment–Related Practices exclusion applies and eliminates Utica's duty to defend on B & J's behalf.

### ii. Employer's Liability Exclusion

Even though the Court is not required to consider the Employer's Liability exclusion as it has already determined that the Employment–Related Practices exclusion applies to bar the duty to defend, the Court notes that the Employer's Liability Exclusion would also relieve Utica of its duty to defend on B & J's behalf. *See Harbor East–Office, LLC,* No. 98–2329, 1999 WL 672154, at *4.

■ This exclusion bars coverage for matters that would ordinarily be covered by Workers' Compensation laws, and it specifically excludes " 'bodily injury' " to any 'employee' of the insured arising out of and in the course of employment by the insured or performing duties relating to the conduct of the insurer's business." Def.'s Mot. for Summ. J., Ex. A, at 100. It specifically provides that the exclusion applies "whether the insured may be employed as an employer or in any other capacity." *Id.*

Therefore, the Court's fundamental inquiry is to determine whether the bodily injury suffered by Blankenship "arose out of and in the course" of her employment with B & J. Again, this exclusion does not appear to have been specifically interpreted in any Maryland case, but it has been broadly interpreted in other contexts under Maryland law and this Court's decision in *Beretta, U.S.A., Corp. v. Federal Ins. Co.,* 117 F.Supp.2d 489, 493–94 (D.Md. 2000). *Beretta* held that "the words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like" and that the term contemplates "but for" causation rather than proximate causation. *Id.*

Here, but for Ms. Blankenship's employment at B & J, this simply would not have happened. She would not have been in the building; she would not have been in the basement but for her status as an employee of B & J. Therefore, the Court concludes that this satisfies the requirement of the exclusion that the injury was suffered during the course of her employment.

■ B & J counters that there is an exception to the exclusion for a "temporary worker," who is defined as "a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." Def.'s Mot. for Summ. J., Ex. A, at 113. In this case, that clearly is a narrowing of the exclusion for Workers' Compensation laws, because a temporary worker furnished to an employer may not be in the same legal circumstances as a direct employee.

This particular employee worked summers and part-time during the school year. While she may have been recruited through a high school, that does not mean that she was "furnished" to B & J by a high school or by anyone else. The Court interprets this provision, which potentially would bring this back within coverage, as not being applicable to a worker who is

simply a part-time employee, as opposed to someone who has been "furnished" to an employer by an entity akin to a temporary-staffing agency. This interpretation gives the term its common meaning.

There is no indication in this record that Ms. Blankenship was referred to B & J by a third party or furnished by a third party, or that her term of employment was to be of a limited duration, such that she would be considered a replacement for a permanent employee on leave, or that she was hired to meet seasonable or short-term workload conditions. Rather, she was an employee of an indefinite nature; the shortened hours she had were simply reflective of the fact that she was a student and could not work full-time during the school year.

Thus, although the Court premises its grant of summary judgment on the resolution of the issue under the Employment–Related Practices exclusion, the Court notes that the Employer's Liability exclusion would lead to the same result.

### iii. Expected and Intended Injury Exclusion

In light of the Court's findings that either the Employment–Related Practices exclusion or the Employer's Liability exclusion would apply to relieve Utica of its duty to defend, the Court need not consider the Expected and Intended Injury Exclusion. Def.'s Mot. for Summ. J., Ex. A, at 99; *See Harbor East–Office, LLC,* No. 98–2329, 1999 WL 672154, at *4.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Defendant's Motion for Summary Judgment [Paper No. 23] and dispose of the other motions.

### ORDER

Upon consideration of Defendant Utica Mutual Insurance Company's Motion for Summary Judgment [Paper No. 23], Plaintiffs Dwight Puckett's and B & J Auto Supply, Inc.'s Oppositions thereto, and for the reasons stated on the record and in the accompanying Memorandum Opinion, it is this 27th day of February, 2009, by the United States District Court for the District of Maryland, hereby

**ORDERED** that Defendant Utica Mutual Insurance Company's Motion for Summary Judgment [Paper No. 23] is **GRANTED;** and it is further

**ORDERED** that the Court **DECLARES** that Defendant Utica Mutual Insurance Company is under no obligation to defend the Plaintiffs in the lawsuit brought by Amy Blankenship in the Circuit Court for Prince George's County entitled *Blankenship v. B & J Auto Supply, Inc., et al.,* Case No. CAL–05–1101; and it is further

**ORDERED** that Plaintiff Dwight Puckett's Motion to Strike [Paper No. 40] is **DENIED;** and it is further

**ORDERED** that Plaintiff B & J Auto Supply Inc.'s Motion to Supplement the Record [Paper No. 47] is **GRANTED;** and it is further

**ORDERED** that judgment for costs be **ENTERED** in favor of Defendant Utica Mutual Insurance Company against Plaintiffs Dwight Puckett's and B & J Auto Supply, Inc.; and it is further

**ORDERED** that the Clerk of this Court is directed to **CLOSE** this case.