Filed 10/6/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LUIZ BAEK, | B251201 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC494301) |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Joseph R. Kalin and Josh M. Fredricks, Judges. Affirmed.

Mastroianni Law Firm and A. Douglas Mastroianni for Plaintiff and Appellant.

Berkes Crane Robinson & Seal, Steven M. Crane, Barbara S. Hodous and Steven M. Haskell for Defendant and Respondent.

Plaintiff and appellant Luiz Baek, a massage therapist employed by Heaven Massage and Wellness Center (HMWC), was accused in an underlying action of sexually assaulting a client during a massage. In the present action, Baek alleges that defendant and respondent Continental Casualty Company (Continental), HMWC's comprehensive general liability (CGL) insurer, had a duty to defend and indemnify him in that action, and that its failure to do so constituted breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The trial court sustained Continental's demurrer to all causes of action, concluding as a matter of law that Baek was not entitled to a defense under the Continental policy.

We affirm. To demonstrate that he was insured under the policy, Baek had to allege that the acts on which liability was based were "with respect to the conduct of [HMWC's] business," "within the scope of . . . employment," or committed "while performing duties related to the conduct of [HMWC's] business." Because the intentional sexual assault alleged in the underlying case cannot properly be characterized as within the scope of Baek's employment or having occurred while performing duties related to the conduct of HMWC's business, Baek was not insured under the policy, and Continental had no duty of defense or indemnity. The trial court thus did not err in sustaining the demurrer without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The *Jaime W.* Action

In May 2010, Jaime W. sued HMWC and Baek for sexual assault. (Super. Ct. L.A. County, BC437342 [the *Jaime W.* action].) The operative complaint alleged that during a massage on January 3, 2010, Baek "touched, fondled, rubbed, grabbed and squeezed Plaintiff's breasts, buttocks, inner thighs and genitals, all while making and emitting moans, groans, grunts and other sounds and noises of sexual pleasure." The complaint alleged seven causes of action against HMWC and Baek: sexual harassment,

2

sexual battery, assault, battery, false imprisonment, intentional infliction of emotional distress, and negligence.

HMWC tendered Jaime W.'s claim to Continental, which had issued HMWC a CGL policy for the period November 10, 2009, to November 10, 2010 (the Continental policy). Continental denied HMWC's claim, asserting there was no coverage because the policy's "professional services" exclusion applied and excluded losses from "'[b]odily injury,' 'property damage,' [or] 'personal and advertising injury' caused by the rendering or failure to render any professional service." HMWC then cross-complained against Continental for breach of insurance contract and breach of the implied covenant of good faith and fair dealing.

The trial court granted summary judgment for Continental on the cross-complaint, concluding there was no coverage under the Continental policy and no duty to defend. HMWC appealed, and we reversed, concluding as a matter of law that Jaime W.'s claim did not fall within the professional services exclusion because a sexual assault that occurs during the rendering of a professional service is not injury "'*caused by* the rendering [of a] professional service'" within the meaning of the policy. (*Heaven Massage and Wellness Center v. Continental Casualty Company* (June 21, 2012, B237987) [nonpub. opn.] [at pp. 6-9].)

## II.     The Present Complaint and Demurrer

Baek filed the present action against Continental on October 22, 2012. The trial court sustained a demurrer to the first amended complaint with leave to amend, and Baek filed the operative second amended complaint (complaint) on May 24, 2013. The complaint alleges that Continental owed Baek a duty of defense and indemnity in the *Jaime W.* action because Baek was alleged to be either a partner or employee of HMWC and, as such, was an additional insured under the Continental policy. The complaint asserts that Continental's failure to defend and indemnify Baek gave rise to three causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) fraud.

3

Continental demurred.  It asserted that as a partner or employee, Baek was covered by the Continental policy only "for 'acts within the scope of [his] employment [by HMWC]' or 'while performing duties related to the conduct of [HMWC's business]' (but not if the bodily injury arose 'out of his . . . providing or failing to provide professional health care services')."  Continental asserted that this court's prior opinion compelled the conclusion that Baek's alleged sexual assault was not within the scope of his employment:  "Because Baek's alleged acts were **not** part of the professional services he was hired to perform, they are necessarily **outside** the scope of his employment.  And, because the acts charged against him were outside the scope of his employment, he does not qualify as an insured under his employer's liability policy."

Baek opposed the demurrer.  He noted that Jaime W. had alleged he was a partner or employee of HMWC, an allegation Continental was required to accept as true.  Thus, Baek said, he was an "insured" under the Continental policy because all the tortious acts Jaime W. alleged arose out of HMWC's business or were committed while performing duties related to the conduct of HMWC's business—i.e., during the performance of a massage.

On August 1, 2013, the court sustained the demurrer without leave to amend.  Its written order said:  "Baek's sexual battery was not committed within the course and scope of his employment as a masseu[r], was not apparently done for the purpose of carrying on HMWC's business as a provider of massage services, and was not ca[us]ally connected to HMWC's business as a provider of massage services[.]  Baek was not covered or potentially covered under the HMWC policy.  As a result, Continental did not breach the insurance contract, or the covenant of good faith and fair dealing, by refusing to defend Baek or by refusing to reimburse Baek for his defense costs.  If there was no potential coverage for Baek, Continental cannot have breached its duty 'reasonably to inform an insured of the insured's rights and obligations under the insurance policy.'  Plaintiff fails to suggest how it is possible to cure, and indeed, has failed to cure despite opportunity."

4

Judgment was entered August 15, and notice of entry of judgment was served August 20, 2013. Baek timely appealed.

## STANDARD OF REVIEW

"'In determining whether [a] plaintiff[] [has] properly stated a claim for relief, our standard of review is clear: "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] . . . .'" Our review is de novo. (*Ibid.*) The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.) We are not concerned with plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. (*Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1706.)" (*Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1291.)

## DISCUSSION

### I. Overview of Issues

The sole named insured under the Continental policy was "Heaven Massage & Wellness Center," identified in the insurance declarations as a "[p]artnership." As relevant here, the policy also identified the following additional insureds:

(1) <u>Members and partners</u>: "If you are designated in the Declarations as . . . [a] partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, *but only with respect to the conduct of your business*. (Italics added.)

5

(2)    Employees: "Each of the following is also an insured: . . . your 'employees,' . . . *but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business*." (Italics added.)

Baek contends Continental owed him a duty of defense because the complaint in the underlying action alleged that Baek was either a partner or an employee of HMWC, and the alleged sexual assault occurred in the scope of Baek's employment or while performing duties relating to the conduct of HMWC's business. Continental disagrees, contending that Baek has never alleged that he is a partner or employee, and thus he is not an additional insured under the policy. Further, even if Baek had alleged he was a partner or employee, he would be an additional insured under the Continental policy *only* "with respect to the conduct of [HMWC's] business," "for acts within the scope of . . . employment," or "while performing duties related to the conduct of [HMWC's] business." Because the alleged acts of sexual battery cannot properly be characterized as relating to the conduct of HMWC's business or within the scope of Baek's employment, Baek cannot be an additional insured under the Continental policy.

In the sections that follow, we review the legal principles applicable to interpreting insurance contracts. We then apply these principles to conclude that regardless of his employment status, Baek is not an additional insured under the Continental policy because the sexual misconduct alleged in the *Jaime W.* action cannot be characterized as relating to or arising out of Baek's employment relationship with HMWC. We thus affirm the order sustaining the demurrer.

## II.    General Legal Principles

"'[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. [Citations.]' (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 . . . .) The insurer must defend any claim that would be covered if it were true, even if it is 'groundless, false or fraudulent.' (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 . . . .) 'Implicit in this rule is the principle that the duty to defend is broader than

6

the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]' (*Horace Mann Ins. Co. v. Barbara B*. (1993) 4 Cal.4th 1076, 1081.) 'Thus, when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that *the claim cannot be covered*. In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the *absence* of any such potential. [Citation.]' (*Ringler Associates Inc. v. Maryland Casualty Co*. (2000) 80 Cal.App.4th 1165, 1186, fn. omitted.) Doubts concerning the potential for coverage and the existence of [a] duty to defend are resolved in favor of the insured. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 . . . .)'" (*Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 288-289.)

## III. Baek Was Not an Additional Insured Under the Continental Policy

### A. Baek's Employment Relationship With HMWC

Continental urges that Baek cannot be an additional insured under the policy because he "does not allege in the [complaint] that he was an employee or a partner of HMWC." (Emphasis omitted.) Instead, Continental says, "he alleges he was an independent contractor," an allegation "established as true by Baek's own material allegations."

We do not agree. Baek's complaint alleges that Baek executed an independent contractor agreement with HMWC,[1] but that Continental nonetheless "knew at that early

---

[1]     The independent contractor agreement, which is attached as exhibit A to the complaint, states that Baek "is an independent contractor and not an employee of Heaven Massage." In that document, Baek and HMWC agree that Baek (1) "has control of the means, manner and method by which services are provided," (2) "has the right to perform services for others during the term of this agreement," (3) "shall indemnify and hold Heaven Massage harmless from any loss or liability arising from services provided," and (4) "is responsible for maintaining appropriate certification, licensure and liability

stage of the litigation—indeed before even any appearance had been made by the defendants—that no determination had yet been made regarding Baek's status *vis-à-vis* HMWC. [Continental] knew that [Jaime W.] would attempt to prove that Baek was HMWC's employee or had some other status (partner, co-venturer, etc.) with HMWC that would make HMWC vicariously liable for his alleged conduct and which would provide a basis for coverage under the [Continental] policy. [Continental] also knew that . . . there was a potential for coverage for Baek under its policy since there was a question [of] disputed fact regarding his status as an employee." Because the underlying case settled, "no conclusive judicial determination . . . was ever made[] regarding Baek's relationship to HMWC. Thus, it could have been established at trial [in the underlying action] that Baek was an employee, partner or had some other relationship to HMWC . . . entitling him to coverage under the [Continental] policy as, for example, HMWC's employee."

As the above-quoted language makes clear, although in the complaint Baek admitted he signed an independent contractor agreement, he did *not* allege he was an independent contractor. We therefore do not agree with Continental that Baek's allegations regarding his employment status are inconsistent with coverage.

In any event, it is Jaime W.'s allegations, not Baek's, that give rise to a potential duty to defend. "'[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citations.] 'Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]' [Citations.]" (*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1036.) Thus, in resolving the question whether a duty to defend exists, "the insurer has a higher burden than the insured. '[T]he insured need only show

---

insurance (CA Health Professional License, Los Angeles Business License, Liability Insurance) (including all costs thereof)." Baek agrees to "maintain a malpractice insurance policy of at least $2,000,000 aggregate annual and $1,000,000 per incidence." The agreement "does not create a partnership relationship."

that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.'" (*American States Ins. Co. v. Progressive Casualty Ins. Co*. (2009) 180 Cal.App.4th 18, 27.)

"An insurer's 'duty to defend arises *when tender is made*. It obligates the insurer, unless no part of any claim is potentially covered, to fund a defense to minimize the insured's liability. [Citation.]'" (*The Housing Group v. PMA Capital Ins. Co.* (2011) 193 Cal.App.4th 1150, 1155, italics added.) "[S]ometimes it will not be clear whether an action brought against the indemnitee is within the scope of the indemnity until after the underlying action has been resolved. In those situations, the duty to defend nonetheless arises. That is to say, the law implies in every indemnity contract, unless the contract provides to the contrary, the duty to defend claims which, at the time of tender, *allege* facts that would give rise to a claim of indemnity. (*Crawford* [*v. Weather Shield Mfg., Inc*. (2008)] 44 Cal.4th [541,] 558.)" (*City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 249.) The duty to defend continues "'"until the lawsuit is concluded or until the insurer shows that facts extrinsic to the third party complaint conclusively negate the potential for coverage."'" (*Sprinkles v. Associated Indemnity Corp*. (2010) 188 Cal.App.4th 69, 77.)

Because the duty to defend arises when a potential insured tenders his or her claim, Baek's allegations in the present action about his employment relationship with HMWC are irrelevant to Continental's duty to defend. Instead, we look to Jaime W.'s allegations *in the underlying action* about Baek's status. The operative complaint in the *Jaime W.* action alleged that at all relevant times, Baek "was the agent, managing agent, principal, owner, partner, joint venturer, representative, supervisor, manager, servant, employee and/or co-conspirator of [HMWC]." Continental was bound to accept these allegations as true unless extrinsic facts known to Continental established otherwise. (E.g., *Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 680 ["If, as a matter of law, . . . there is no potential for coverage based on the allegations in the complaint or the extrinsic facts known to the insurer, then there is no duty to defend."].) We therefore assume for purposes of this appeal that Baek was a partner or employee of

HMWC and consider whether the allegations of Jaime W.'s complaint give rise to a duty to defend.

> B.     *The Sexual Assault Alleged by Jaime W. Was Not "Within the Scope of Employment"*

The sole named insured under the Continental policy was "Heaven Massage & Wellness Center," identified in the insurance declarations as a "[p]artnership."  As we have said, the policy also provided coverage to HMWC's employees "for acts *within the scope of their employment*."  (Italics added.)  We thus address whether the sexual assault alleged in the *Jaime W.* action was within the scope of Baek's employment.

In *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291 (*Lisa M.*), our Supreme Court rejected the contention that a hospital ultrasound technician's sexual molestation of a patient during an ultrasound exam was within the scope of his employment.  There, in the course of conducting an ultrasound of a pregnant woman, the technician inserted the ultrasound wand and his fingers into her vagina, telling her that "he needed to excite her to get a good view of the baby."  (*Id.* at p. 295.)  The court noted that the assaultive acts were causally related to the technician's employment "in the sense they would not have occurred had he not been so employed. [The technician's] employment as an ultrasound technician provided the opportunity for him to meet plaintiff and to be alone with her in circumstances making the assault possible.  The employment was thus one necessary cause of the ensuing tort."  (*Id.* at pp. 299-300.)  Nonetheless, the sexual assault was not "engendered by" or an "outgrowth" of the technician's employment.  The court explained:  "As with . . . nonsexual assaults, a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions.  Here the opposite was true:  a technician simply took advantage of solitude with a naive patient to commit an assault for reasons unrelated to his work.  [The technician's] job was to perform a diagnostic examination and record the results.  The task provided no occasion for a work-related dispute or any other work-related emotional

10

involvement with the patient. The technician's decision to engage in conscious exploitation of the patient did not *arise out of* the performance of the examination, although the circumstances of the examination made it possible. 'If . . . the assault was not motivated or triggered off by anything in the employment activity but was the result of only propinquity and lust, there should be no liability.' [Citation.]" (*Id.* at p. 301.)

The result was unchanged, the court said, by the fact that the technician's job involved intimate physical contact with patients. It explained: "In our view, that a job involves physical contact is, by itself, an insufficient basis on which to impose vicarious liability for a sexual assault. [Citation.] To hold medical care providers strictly liable for deliberate sexual assaults by every employee whose duties include examining or touching patients' otherwise private areas would be virtually to remove scope of employment as a limitation on providers' vicarious liability. In cases like the present one, a deliberate sexual assault is fairly attributed not to any peculiar aspect of the health care enterprise, but only to 'propinquity and lust' [citation]." (*Lisa M.*, *supra*, 12 Cal.4th at p. 302, fn. omitted.) The court concluded: "Although the routine examination [the technician] was authorized to conduct involved physical contact with Lisa M., [his] assault on plaintiff did not originate with, and was not a generally foreseeable consequence of, that contact. Nothing happened during the course of the prescribed examinations to provoke or encourage [the technician's] improper touching of plaintiff. [Citations.] The assault, rather, was the independent product of [his] aberrant decision to engage in conduct unrelated to his duties." (*Id.* at p. 303.)

The court reached a similar conclusion in *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992 (*Farmers Ins.*). There, the court considered whether a deputy sheriff's tortious acts—"lewdly proposition[ing] and offensively touch[ing] other deputy sheriffs working at the county jail"—were within the scope of his employment. (*Id.* at p. 997.) The court concluded they were not. It explained that if an employee's tort is "'personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense'" will not bring the tort within the scope of employment. (*Id.* at p. 1007.) The deputy's requests for sexual favors and

11

inappropriate touching "were motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty of a deputy sheriff at a county jail," and thus were not within the scope of the employment. (*Id*. at p. 1007.)

The present case is analogous. As in *Lisa M.* and *Farmers Ins.*, Baek's employment as a massage therapist provided him the opportunity to meet Jaime W. and to be alone with her, but nothing alleged in the underlying complaint suggested that the alleged assault was "engendered by" or an "outgrowth" of his employment in that its "motivating emotions were fairly attributed to work-related events or conditions." (*Lisa M.*, *supra*, 12 Cal.4th at p. 301.) Instead, as in *Lisa M.*, the opposite was true: as alleged in the complaint, Baek "simply took advantage of solitude with a naive [client] to commit an assault for reasons unrelated to his work." (*Ibid*.) Thus, as in the cases cited above, the alleged sexual assault was not an "act[] within the scope of [Baek's] employment" within the meaning of the Continental policy.

> C.   *The Alleged Sexual Assault Did Not Occur "While Performing Duties Related to the Conduct of [HMWC's] Business" or "With Respect to the Conduct of [HMWC's] Business"*

As we have said, the Continental policy covered HMWC partners "with respect to the conduct of [HMWC's] business," and HMWC employees "while performing duties related to the conduct of [HMWC's] business." We therefore consider whether the alleged sexual misconduct can properly be so characterized. For the reasons that follow, it cannot.

We are unaware of any California cases (and the parties have not cited us to any) that have considered whether sexual misconduct at work can be said to occur "while performing duties related to the conduct of" an insured's business. Several out-of-state courts have considered the issue, however, concluding that a sexual assault does *not* come within this phrase, even if it occurs at the place of work and during the work day.

*Chestnut Associates, Inc. v. Assurance Co. of America* (M.D. Fla. 2014) ___ F.Supp.2d ___ [2014 WL 1711579] (*Chestnut Associates*) is one such case. There,

plaintiffs in an underlying action sued Chestnut, a pool service company, alleging that while servicing plaintiffs' pool, a Chestnut employee removed his clothes, "'sexually pleasured himself in the pool' and 'brought this sexual behavior to conclusion by casting ejaculate into [plaintiffs'] pool.'" (*Id.* at p. ___ [2014 WL 1711579 at p. *2].) Plaintiffs sued Chestnut for emotional distress, mental anguish, embarrassment, humiliation, loss of dignity, and diminution of the value of their house, and Chestnut tendered the claim to its insurer, which denied it. (*Ibid.*) Chestnut then brought a separate action against the insurer, seeking a declaration that the insurer owed a duty to defend. (*Id.* at p. ___ [2014 WL 1711579 at p. *1].)

The district court granted summary judgment for the insurer. It noted that the applicable CGL policy provided coverage for employees "for acts within the scope of their employment by you *or while performing duties related to the conduct of your business.*" (*Chestnut Associates*, *supra*, ___ F.Supp.2d at p. ___ [2014 WL 1711579 at p. *6], italics added.) It reasoned that the alleged tortious act did not come within either category: "[N]o reasonable jury could ever find the wrongful acts of the pool service technician were done 'while performing duties related to the conduct of [Chestnut's] business' or 'acts within the scope of [his] employment.' The alleged wrongful conduct was not of the kind the pool service technician was hired to perform. The pool service technician had 'stepped away' from his employer's business at the time the tort was committed, performing the alleged wrongful acts solely for his own benefit. Based on the facts alleged in the underlying complaint, the pool service technician was not an insured under [Chestnut's] policy . . . ." (*Ibid.*, emphasis omitted.)

The court similarly concluded in *Parts Inc. v. Utica Mut. Ins. Co.* (D. Md. 2009) 602 F.Supp.2d 617 (*Parts Inc.*). There, an employee sued her employer and manager, alleging that the manager sexually assaulted her in the basement of the employer's store. (*Id.* at pp. 618-619.) Defendants tendered the claim to the employer's insurer, which denied it, and defendants then sued the insurer for declaratory relief. (*Id.* at p. 619.) In that action, the manager contended he was an additional insured under the employer's CGL policy, which defined insureds as employees or managers acting "'within the scope

13

of their employment . . . or while performing duties related to the conduct of your business.'" (*Id*. at p. 621, emphasis omitted.)

The district court held that the manager was not an additional insured as a matter of law because the alleged sexual assault did not occur while the manager was performing duties related to the conduct of the employer's business. It explained: "The case before the Court is . . . somewhat analogous to *Selective Ins. Co. v. Oglebay*, 242 Fed.Appx. 104, 108 (4th Cir. 2007) (unpublished) (per curiam). In that case, a driving instructor was alleged to have sexually molested a student, and the Fourth Circuit concluded that a driving instructor was not an insured under the policy and thus the insurer did not have a duty to defend because the molestation was not an act of employment as contemplated by the policy. *Id*. Although [the manager's] acts were committed during the time or at the place related to his employment, those acts were certainly not the performance of a duty related to the conduct of [the insured's] business . . . . Accordingly, the Court concludes that, for purposes of this case, [the manager] is simply not an insured." (*Parts Inc*., *supra*, 602 F.Supp.2d at p. 621, emphasis omitted.)

The present case is analogous. Although the alleged sexual assault of Jaime W. occurred during a massage, the particular acts on which liability is premised—i.e., "touch[ing], fondl[ing], rubb[ing], grabb[ing] and squeez[ing] Plaintiff's breasts, buttocks, inner thighs and genitals, all while making and emitting moans, groans, grunts and other sounds and noises of sexual pleasure"—indisputably were not "duties related to the conduct of [HMWC's] business" or acts of the kind Baek had been hired to perform. Instead, they represented a "stepping away" from HMWC's business because they were performed solely for Baek's own benefit, not for HMWC's. They thus cannot be said to have occurred "while performing duties related to the conduct of [HMWC's] business."

For the same reasons, we conclude that the alleged sexual assault was not "with respect to the conduct of [HMWC's] business." Although HMWC's business created the opportunity for the alleged assault, the assault was not done at HMWC's request or for its benefit. To paraphrase *Lisa M*., a deliberate sexual assault "is fairly attributed not to any peculiar aspect of [a massage enterprise], but only to 'propinquity and lust.'" (*Lisa M*.,

14

*supra*, 12 Cal.4th at p. 302.)  It therefore cannot be characterized as having occurred "with respect to" the conduct of HMWC's business."**2**

Baek contends that the phrase "but only with respect to the conduct of [HMWC's] business" should be read broadly, to connote only a minimal causal connection or incidental relationship.  Neither of the cases Baek cites in support of this argument concern sexual misconduct, however, and thus neither stands for the proposition that sexual harassment or sexual assault has the requisite causal connection to Baek's employment to give rise to coverage under an employer's CGL policy.  (*Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 714 [*held*: commercial tenant's CGL insurer owed landlord a duty of defense in premises liability action brought by tenant's employee's parents; rejecting insurer's contention that "'but only with respect to'" refers only to liability directly caused by landlord]; *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328 [building owner was additional insured under contractor's CGL policy when contractor's employee was injured while performing repairs on building's roof; "[employee's] injury clearly 'arose out of' the work he was performing on the roof of Syufy's building.  The relationship between the defective [roof] hatch and the job was more than incidental, in that [employee] could not have done the job without passing through the hatch."].)

### D.  *Baek's Additional Contentions Are Without Merit*

#### 1.  Negligence

Baek contends that even if there was no duty to defend with regard to the allegations of sexual assault, there *was* a duty to defend Jaime W.'s claim of negligence.  We do not agree.  "The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged *facts* . . . reveal a possibility that the claim may be covered by the policy."  (*Atlantic Mutual Ins. Co. v. J. Lamb, Inc*. (2002) 100 Cal.App.4th 1017, 1034, italics omitted;

---

**2**     Having so concluded, we do not address Continental's additional contention that it did not owe Baek a duty of defense because he did not timely tender his claim.

*Cunningham v. Universal Underwriters* (2002) 98 Cal.App.4th 1141, 1148 [same].) Here, although Jaime W. asserts a cause of action for negligent massage, the sole *facts* alleged in support describe intentional conduct—i.e., that Baek "touched, fondled, rubbed, grabbed and squeezed Plaintiff's breasts, buttocks, inner thighs and genitals, all while making and emitting moans, groans, grunts and other sounds and noises of sexual pleasure." These alleged acts of sexual misconduct "are, by their very nature, intentional" (*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1606)—to paraphrase *Shanahan v. State Farm General Ins. Co.* (2011) 193 Cal.App.4th 780, 788, one does not "accidentally" sexually fondle another. Thus, the cause of action for negligence did not give rise to a duty to defend.

Jaime W.'s complaint also alleges that each defendant negligently hired, trained, and supervised Baek. Although this allegation on its face is alleged against Baek, as well as the other defendants, we conclude that Baek cannot be liable for failing to use due care while supervising *himself*. (See *State Farm Fire & Casualty Co. v. Century Indemnity Co.* (1997) 59 Cal.App.4th 648, 663 ["We next note that State Farm treats Derrick and the other teachers the same with respect to the claims based on the failure to report. However, in doing so, State Farm conveniently ignores obvious and material differences between them. The other teachers' potential liability arose solely from their failure to properly respond to information about sexual misconduct *by another teacher. . . .* [¶] [I]f [insurer] had a duty to defend Derrick against claims based on failure to report, what would emerge is a simple way to plead around the caselaw that precludes a duty to defend teachers against claims of molestation. One need only allege that the teacher/molester negligently failed to report the information known to him or her that would lead a reasonable person to suspect a student had been molested."].)

2. False Imprisonment

Baek contends Continental had a duty to defend because Jaime W.'s complaint contained a cause of action for false imprisonment, for which there is coverage under the Continental policy. Again, we do not agree. Courts have found no duty to defend

16

allegations of nonsexual misconduct that are "inseparably intertwined" with allegations of intentional sexual misconduct. For example, in *Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 653, the plaintiff's allegations of nonsexual conduct—"obtaining information about plaintiff during counseling and using this information and misusing counseling techniques to create transference and to control and induce plaintiff's behavior"—were "'inseparably intertwined'" with the allegations of sexual assault. The court explained: "Plaintiff's complaint alleges [defendant's] misuse of his counseling position resulted in the inducement for her to engage in sexual relations with him. He used the information he learned about plaintiff to influence and control her behavior and he utilized the feelings created by transference to create a sexual relationship. None of the allegations of [defendant's] malfeasance in counseling stands separate from the allegation of sexual misconduct. Accordingly, there is no coverage . . . ." (*Ibid.*)

The same is true in the present case. Jaime W. alleged that she felt powerless to stop Baek's sexual assault because he "intentionally and/or recklessly deprived Plaintiff of her freedom of movement by use of deceit and the entire set-up of the massage/treatment room." The alleged false imprisonment thus is inextricably intertwined with the alleged assault because Baek is alleged to have falsely imprisoned Jaime W. *in order to* sexually assault her.

### 3.     Duty to Defend

Baek contends finally that Continental's duty of defense could not have been decided on the pleadings because whether the alleged sexual assault was within the scope of Baek's employment was a "disputed [fact] issue to be decided at trial based on the context of the employment environment." (Italics omitted.) Not so. Courts have routinely sustained demurrers where the facts alleged in the complaint would not support a finding that sexual misconduct occurred in the course and scope of employment. In *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, for example, the plaintiff, an 11-year-old student, sued the school district for damages arising out of a sexual assault by a school custodian on school property. The court affirmed an order

17

sustaining a demurrer for the district, concluding that the sexual assault had not occurred in the scope of the custodian's employment as a matter of law. (*Id.* at p. 138 ["Where the facts of the case make it arguable whether the employee has acted within the scope of his employment, then the scope of employment issue is one properly decided by the trier of fact. However, where the facts would not support an inference that the employee acted within the scope of his employment and where there is no dispute over the relevant facts, the question becomes one of law. [Citation.] Here, resolution of the scope of employment issue is proper on appeal because the facts, seen in the light most favorable to appellant, present no grounds upon which a trial court might base a finding that [the custodian] acted within the scope of his employment."].)

The present case is analogous. Because the facts alleged in Jaime W.'s complaint would not support the conclusion that the alleged sexual assault occurred in the course of Baek's employment or while performing duties relating to HMWC's business *as a matter of law*, the trial court did not err in sustaining Continental's demurrer.

## DISPOSITION

The judgment of dismissal and order sustaining the demurrer are affirmed. Continental shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, J.[*]

We concur:


WILLHITE, Acting P. J.                MANELLA, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.